JILL P. TELFER, State Bar No. 145450
LAW OFFICES OF JILL P. TELFER
A Professional Corporation
331 J Street, Suite 200
Sacramento, California 95814
Telephone:   (916) 446-1916
Facsimile:   (916) 446-1726
E-mail:   jtelfer@telferlaw.com

Attorneys for Plaintiff
MARLIESE JEPHSON

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLIESE JEPHSON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>RONALD M. CARN, M.D., Individually, RONALD M. CARN, M.D., INC., and DOES 1 through 20, inclusive,<br><br>　　　　　Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**1. Sexual Harassment – Hostile Work Environment;**<br>**2. Sexual Harassment – Quid Pro Quo;**<br>**3. Retaliation;**<br>**4. Failure to Prevent Harassment and Retaliation;**<br>**5. Violation of the Ralph Act;**<br>**6. Assault;**<br>**7. Battery; and**<br>**8. Negligent Infliction of Emotional Distress.**<br><br>**\*\*JURY TRIAL DEMANDED\*\*** |

## JURISDICTION

1.　　This action is for damages and equitable relief and is brought pursuant to 42 U.S.C. 2000e, the California Fair Employment and Housing Act ("FEHA"), California Government Code ("Gov. Code") § 12940, et seq., and the Ralph Barnes Act. Jurisdiction of the present claims is based on 28 U.S.C. 1367.

///

///

///

2. This action arises out of events involving Plaintiff MARLIESE JEPHSON ("Jephson"), Defendant RONALD M. CARN, M.D., INC. ("Carn Inc.") Defendant RONALD M. CARN, M.D. ("Dr. Carn"). Venue of this action is proper since the actions as alleged herein occurred in the Eastern District of California.

3. Dr. Carn and Carn Inc. were the employer of Ms. Jephson from September 28, 2006 to Ms. Jephson's constructive termination on September 4, 2019 after being assaulted and repeatedly sexually harassed by Dr. Carn. Jephson is informed and believes Defendant Carn Inc. is and at all times relevant hereto was a corporation duly organized and existing under the laws of California. Defendant Dr. Carn is and at all times relevant hereto was the Chief Executive Officer and a Director of Defendant, Carn, Inc and a resident of the State of California.

4. Upon information and belief, there exists, and at all times relevant hereto existed, a unity of interest and ownership among Defendants such that any separateness and individuality between them ceased or never occurred at all and are the alter egos of one another. Adherence to the fiction of the separate existence of the corporation as an entity distinct from Dr. Carn would permit abuse of any corporate privilege, sanction fraud, and promote injustice.

5. At all times herein alleged, Defendants participated in the doing of the acts and omissions herein alleged and were acting within the purpose, course, and scope of their agency and/or employment with one another and were the agents, managing agents, servants, employees, alter-egos, co-conspirators, joint-venturers, partners, successors-in-interest and/or predecessors in interest of each other. At all times herein mentioned, Defendants were acting within the purpose, course, and scope of their agency or employment one with another so as to invoke vicarious liability and respondeat superior liability so as to hold the corporation responsible for the injuries to Jephson.

6. At all times herein mentioned, Defendants, including all of the corporation's managing agents, officers and directors, save for Jephson herself, had advance knowledge of and/or ratified each and every act or omission complained of herein. At all times herein relevant, Defendants and/or their managing agents, officers and/or directors, save for Jephson herself, committed and/or participated in the wrongful acts or omissions complained of herein or ratified and/or aided and abetted such acts or omissions.

7. Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 10, and therefore sues them by such fictitious names. Plaintiff is informed and believes and thereon alleges that said Defendants are in some manner legally responsible for the activities and damages alleged herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

8. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants were acting as the partner, agent, servant, and employee of each of the remaining Defendants, and in doing the things alleged herein was acting within the course and scope of such agency and with the knowledge of the remaining Defendants.

## GENERAL ALLEGATIONS

9. Jephson began working for Dr. Carn and Carn, Inc. on or about September 28, 2006 as a medical assistant. She was hired to work Monday through Thursday, 8:00 a.m. – 5:00 p.m. During her employment, she received many verbal positive performance reviews and received several cards, texts, and emails from Defendants acknowledging her work ethic and praising her for being a good worker.

10. When she arrived to work for her first full day, the receptionist arrived and both employees noticed that other employees slid their keys under the door and quit without notice. Because the surgery scheduler was one of the employees who quit, Jephson assumed those additional responsibilities. During her employment, Jephson observed that the receptionist and Carn had a very unprofessional relationship. On many occasions, she observed them hugging and kissing and noticed she sat on his lap at work. She also observed that the receptionist was caught filling narcotic prescriptions for her husband by signing Dr. Carn's name.

11. Jephson became the Office Manager and began performing additional job roles for Dr. Carn. Within a few years, Dr. Carn told Jephson that a former payroll and accounting employee was caught embezzling from him and asked Jephson to take over those responsibilities as well. She agreed and immediately taught herself to use QuickBooks. Eventually, Dr. Carn told Jephson that he forgave the former employee and that the former employee paid him back in sexual favors. He ultimately made this former employee an officer of another corporation for which she is a majority

shareholder.

12. Dr. Carn sent Jephson pornographic postcards. He also sent her a wooden box with a heart on it. Inside the box was a stone with the word "PASSION" emblazoned on it. Despite her objections, Dr. Carn continued to subject Jephson to sexually harassing comments and innuendo. He asked if she was "into S&M" and liked to be spanked during sex. On another occasion, he commented on how attractive he thought Jephson was and often made comments about her "hourglass" body shape that "turned [him] on." On many occasions, he said that he wished he were thirty years younger so that Jephson would be attracted to him. He also said that there was a thin line between pain and pleasure. Carn also told Jephson at work that she and her co-worker should start a "dildo factory." Both of the women were visibly uncomfortable at Carn's suggestion, but he continued, telling them that they should stay with him at his home in Reno so that he could watch their "kinky sex" on his hidden cameras.

13. Dr. Carn also called Jephson in the evenings and on weekends numerous times until she answered or called him back. After he gave her a loan, he implied she could "pay him back" by having sex with him. After rejecting him multiple times, Carn became frustrated with Jephson and threatened her, saying words to the effect of, "I could hurt you. I'm a surgeon and no one would ever know. I can do it without leaving marks." This terrified Jephson.

14. Defendants had Botox clinic hours for some of the patients and Dr Carn made a comment about a patient with very large breast implants. He stated to Jephson, "If you wanted to get implants, I would pay for them. You would just have to let me play with them anytime I want," causing her significant distress. On another occasion, she observed Carn in an exam room with a patient after hours—when he emerged from the room, Dr. Carn was zipping up his pants and his belt buckle was dangling.

15. Dr. Carn physically assaulted Jephson on several different occasions. On one occasion, when Jephson told Dr. Carn she did well on an exam she took for school, he came up behind her, swatted her on the buttocks, and said "good job." On another occasion, Dr. Carn sexually assaulted and battered Jephson by grabbing her buttocks in the office during work hours. Another employee confided in Jephson that Dr. Carn put his leg up on her filing cabinet so that his crotch

was right in her face. When Jephson again caught Dr. Carn taking her picture, she objected and asked him to delete the photo. Dr. Carn's behavior routinely made Jephson feel extremely uncomfortable and as if she was being watched and ogled at all times while at work.

16. Dr. Carn also asked invasive questions about Jephson's personal life, including asking her as recently as May 2019 whether she was "fucking" her boyfriend. Around the same time, he again asked Jephson to move in with him and told her she could "pay [him] in sex."

17. The harassment and assault caused Jephson great emotional distress. However, Jephson needed her job. She enjoyed working with the patients and took great pride in helping them.

18. However, around September 2019, Dr. Carn aggressively tried to convince Jephson to go to the Burning Man festival with him. He became so harassing about this that Jephson reported his conduct to other employees and ultimately called in sick to work to avoid him. While he was at the festival, all employees except for Jephson quit. After she refused to accompany him on the trip, he became abusive. When he returned from the festival, he cornered Jephson in the office, coming so physically close to her that she was afraid for her safety. He told her that their "relationship was about to change." Jephson got away from him, told him that she quit, and handed in her keys. Dr. Carn responded by threatening Jephson that she would never work in this town again. Since that time he has attempted to defame her character and intimidate her so she would drop her claims.

19. Jephson filed timely complaints against Defendants with the Department of Fair Employment and Housing ("DFEH") and Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment and failure to prevent sexual harassment. Thereafter, Jephson received notification of her right to sue on October 29, 2019, September 4, 2020, and October 8, 2020, respectively.

## FIRST CAUSE OF ACTION

**SEXUAL HARASSMENT – HOSTILE WORK ENVIRONMENT
VIOLATION OF CAL. GOV. CODE §§ 12940 *et seq*. and 42 U.S.C. § 2000e
AGAINST DEFENDANTS AND DOES 1 – 10**

20. Plaintiff incorporates by reference the factual allegations set forth in all preceding paragraphs.

///

21. The above conduct by Jephson's supervisor was unwelcome, directed towards Jephson, and was part of an ongoing and continuing pattern of conduct. The above conduct caused Plaintiff to perceive her work environment as intimidating, hostile, abusive or offensive, and a reasonable woman in Plaintiff's position would perceive the work environment as intimidating, hostile, abusive or offensive. Jephson complained to Defendants and asked the harassment to stop. After the complaints, the harassment still continued.

22. Carn, Inc. was aware of the hostile work environment and rather than take corrective action, ratified the harassment of Dr. Carn.

23. Defendants' acts were malicious, oppressive or fraudulent with intent to vex, injure, annoy, humiliate and embarrass Plaintiff, and in conscious disregard of the rights or safety of Plaintiff and other employees of Defendants, and in furtherance of Defendants' ratification of the wrongful conduct of the employees and managers of Defendants. Because the above described words and actions, among others, were spoken or carried out and/or ratified by Defendants and/or managerial agents of Defendants in whom Plaintiff placed her justified and good faith trust, and because said Defendants acted in a deliberate, malicious, and intentional manner in order to injure and damage Plaintiff, and/or with callous disregard for Plaintiff's rights, Plaintiff is entitled to recover punitive damages from Defendants.

24. Jephson has suffered and continues to suffer irreparable and other injury as a direct and legal result of actions of Defendants including severe anxiety, physical ailments directly attributable to stress and other emotional trauma, in addition to loss of earning capacity and wage loss.

25. As a result of Defendants' and each of their actions, Plaintiff sustained economic damages to be proven at trial. As a further result of Defendants' and each of their actions, Plaintiff suffered non-economic losses including but not limited to emotional distress resulting in damages to be proven at trial.

26. The above harassing conduct violates California's FEHA, Cal. Gov. Code §§ 12940 *et seq.*, Title VII, and California public policy and entitles Plaintiff to all categories of damages, including exemplary or punitive damages.

## SECOND CAUSE OF ACTION

### SEXUAL HARASSMENT – QUID PRO QUO
### VIOLATION OF CAL. GOV. CODE §§ 12940 *et seq.* and 42 U.S.C. § 2000e
### AGAINST DEFENDANTS AND DOES 1 – 10

27. Plaintiff incorporates by reference the factual allegations set forth in all preceding paragraphs.

28. The above conduct by Plaintiff's supervisor was unwelcome, directed towards Plaintiff, and was part of an ongoing and continuing pattern of conduct. Plaintiff was informed by Defendants that decisions relating to her employment status would be based on her acceptance or rejection of Defendants' sexual advances or conduct. Complaints and/or information regarding much of the harassing conduct were made to Defendants. After the complaints, the harassment continued.

29. Defendants' acts were malicious, oppressive or fraudulent with intent to vex, injure, annoy, humiliate and embarrass Plaintiff, and in conscious disregard of the rights or safety of Plaintiff and other employees of Defendants, and in furtherance of Defendants' ratification of the wrongful conduct of the employees and managers of Defendants. Accordingly, Plaintiff is entitled to recover punitive damages from Defendants.

30. Jephson has suffered and continues to suffer irreparable and other injury as a direct and legal result of actions of Defendants including severe anxiety, physical ailments directly attributable to stress and other emotional trauma, in addition to loss of earning capacity and wage loss.

31. As a result of Defendants' and each of their actions, Plaintiff sustained economic damages to be proven at trial. As a further result of Defendants' and each of their actions, Plaintiff suffered non-economic losses including but not limited to emotional distress resulting in damages to be proven at trial.

32. The above harassing conduct violates California's FEHA, Cal. Gov. Code §§ 12940 *et seq.*, Title VII, and California public policy and entitles Plaintiff to all categories of damages, including exemplary or punitive damages.

///

### THIRD CAUSE OF ACTION

### RETALIATION
### VIOLATION OF CAL. GOV. CODE §§ 12940 *et seq*. and 42 U.S.C. § 2000e
### AGAINST DEFENDANTS AND DOES 1 – 10

33. Plaintiff incorporates by reference the factual allegations set forth in all preceding paragraphs.

34. In violation of California Government Code § 12940 and Title VII, Defendants retaliated against Plaintiff for having opposed, resisted, and complained of the acts alleged herein. Within a short time after Plaintiff complained regarding harassment, Defendants retaliated against Plaintiff by harassing, threatening, and constructively discharging her, causing her significant emotional distress.

35. Jephson has suffered and continues to suffer irreparable and other injury as a direct and legal result of actions of Defendants including severe anxiety, physical ailments directly attributable to stress and other emotional trauma, in addition to loss of earning capacity and wage loss. Plaintiff has sustained economic damages to be proven at trial. As a further result of Defendants' and each of their actions, Plaintiff suffered emotional distress resulting in damages to be proven at trial.

36. The conduct of Defendants and/or their agents/employees as described herein was malicious and/or oppressive and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or its agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants. Consequently, Plaintiff is entitled to punitive damages against Defendants.

### FOURTH CAUSE OF ACTION

### FAILURE TO PREVENT HARASSMENT AND RETALIATION
### VIOLATION OF CAL. GOV. CODE §§ 12940(k)
### AGAINST DEFENDANTS AND DOES 1 – 10

37. Plaintiff incorporates by reference the factual allegations set forth in all preceding paragraphs.

38. In violation of FEHA, Defendants failed to take all reasonable steps necessary to prevent sex harassment against employees. In perpetrating the above-described conduct, Defendants

engaged in a pattern, practice, policy and custom of unlawful sex harassment and retaliation. Said conduct on the part of Defendants constituted a policy, practice, tradition, custom and usage which denied Plaintiff protection of the civil rights statutes enumerated above.

39. At all relevant time periods Defendants failed to make an adequate response and investigation into the conduct of Defendants and the aforesaid pattern and practice, and thereby established a policy, custom, practice or usage within the organization of Defendants, which condoned, encouraged, tolerated, sanctioned, ratified, approved of, and/or acquiesced in unlawful sex harassment towards employees of Defendants, including, but not limited to, Plaintiff.

40. At all relevant time periods there existed within the organization of Defendants a pattern and practice of conduct by their personnel which resulted in sex harassment and/or retaliation, including but not necessarily limited to, conduct directed at Plaintiff.

41. Defendants did not provide adequate sex harassment training with respect to its employees and managers. Defendants were put on notice that it might be committing sex harassment in the workplace and failed to take the reasonable step of conducting a thorough investigation into whether Defendants were committing sex harassment and/or retaliation in the workplace.

42. Defendants knew or reasonably should have known that the failure to provide any or adequate education, training, and information as to their personnel policies and practices regarding sex harassment would result in sex harassment. Providing adequate education, training, and information as to their personnel policies and practices regarding sex harassment was a reasonable step that Defendants could have taken, but did not take, to prevent sex harassment in the workplace. The failure of Defendants to take the above-mentioned reasonable steps to prevent harassment, constituted deliberate indifference to the rights of employees, including but not limited to those of Plaintiff. The failure of Defendants to take the abovementioned reasonable steps was a substantial factor in it committing additional acts of sex harassment of Plaintiff. These additional acts of sex harassment of Plaintiff caused Plaintiff harm.

43. Jephson has suffered and continues to suffer irreparable and other injury as a direct and legal result of actions of Defendants including severe anxiety, physical ailments directly attributable to stress and other emotional trauma, in addition to loss of earning capacity and wage

loss. Plaintiff sustained economic damages to be proven at trial. As a further result of Defendant's actions, Plaintiff suffered emotional distress resulting in damages to be proven at trial.

44. The above harassing conduct, and failure to take reasonable steps to prevent the same, violates California's FEHA, Cal. Gov. Code §§ 12940 *et seq.*, and California Public Policy and entitles Plaintiff to all categories of damages, including exemplary or punitive damages.

45. The conduct of Defendant and/or its agents/employees as described herein was malicious, and/or oppressive, and done with a willful and conscious disregard for Plaintiff's rights and for the deleterious consequences of Defendants' actions. Defendants and/or their agents/employees or supervisors authorized, condoned and ratified the unlawful conduct of the remaining Defendants. Consequently, Plaintiff is entitled to punitive damages against Defendants.

## FIFTH CAUSE OF ACTION

**VIOLATION OF THE RALPH CIVIL RIGHTS ACT –
CALIFORNIA CIVIL CODE SECTION 51.7
AGAINST DEFENDANTS AND DOES 1 – 10**

46. Plaintiff incorporates by reference the factual allegations set forth in all preceding paragraphs.

47. By its acts, omissions, customs, and policies, each Defendant acting in concert/conspiracy, as described above, violated Plaintiff's rights secured by California Civil Code §51.7 to be free from any violence, or intimidation by threat of violence, committed against her person because of her sex.

48. As a direct and proximate result of Defendants' violation of California Civil Code §51.7, Plaintiff sustained injuries and damages, and is entitled to relief as set forth above, and all damages allowed by California Civil Code §§52, 51.7, and California law, not limited to attorney fees, costs, treble damages, and civil penalties.

49. Jephson has suffered and continues to suffer irreparable and other injury as a direct and legal result of actions of Defendants including severe anxiety, physical ailments directly attributable to stress and other emotional trauma, in addition to loss of earning capacity and wage loss.

///

## SIXTH CAUSE OF ACTION

### ASSAULT
### AGAINST DEFENDANTS AND DOES 1 – 10

50. Plaintiff incorporates by reference the factual allegations set forth in all preceding paragraphs.

51. Plaintiff is informed and believes and thereon alleges that Defendants, by and through their principals, agents and employees, conducted themselves unlawfully in violation of public policy and applicable law as described above with conscious disregard of the result or outcome of such conduct.

52. Defendants committed acts with the intent to cause apprehension of immediate injury, and Plaintiff had a reasonable apprehension of an immediate touching. At all relevant times, Defendants had actual or constructive knowledge of the conduct described herein, and condoned, ratified and participated in such acts. Defendants' conduct was committed during the course of and scope of employment.

53. As a direct and proximate result of Defendants' willful, knowing and intentional distress and anguish. Plaintiff is thereby entitled to general and compensatory damages in amount to be proven at trial. Jephson has suffered and continues to suffer irreparable and other injury as a direct and legal result of actions of Defendants including severe anxiety, physical ailments directly attributable to stress and other emotional trauma, in addition to loss of earning capacity and wage loss.

54. The acts of Defendants, as alleged herein, were done with fraud, oppression and malice, with a conscious disregard for Plaintiff's rights and with the intent, design and purpose of injuring Plaintiff, with an improper and evil motive amounting to malice, in conscious disregard of Plaintiff's rights. Because the above described words and actions, among others, were spoken or carried out and/or ratified by Defendants and/or managerial agents of Defendants in whom Plaintiff placed her justified and good faith trust, and because said Defendants acted in a deliberate, malicious, and intentional manner in order to injure and damage Plaintiff, and/or with callous disregard for Plaintiff's rights, Plaintiff is therefore entitled to recover punitive damages against

Defendant.

## SEVENTH CAUSE OF ACTION

### BATTERY
### AGAINST DEFENDANTS AND DOES 1 – 10

55. Plaintiff incorporates by reference the factual allegations set forth in all preceding paragraphs.

56. Plaintiff is informed and believes and thereon alleges that Defendants, by and through their principals, agents and employees conducted themselves unlawfully in violation of public policy and applicable law as described above with conscious disregard of the result or outcome of such conduct. Defendants touched Plaintiff's person with the intent to harm or offend Plaintiff. Plaintiff did not consent to be touched. Plaintiff was harmed or offended by Defendants' conduct. At all relevant times, Defendants had actual or constructive knowledge of the conduct described herein, and condoned, ratified and participated in such acts. Defendants' conduct was committed during the course of and scope of employment.

57. As a direct and proximate result of Defendants' willful, knowing and intentional acts, and Defendants' failure to act, Plaintiff has suffered and will continue to suffer mental distress and anguish. Plaintiff is thereby entitled to general and compensatory damages in amount to be proven at trial.

58. The acts of Defendants, as alleged herein, were done with fraud, oppression and malice, with a conscious disregard for Plaintiff's rights and with the intent, design and purpose of injuring Plaintiff, with an improper and evil motive amounting to malice, in conscious   acts, and Defendants' failure to act, Plaintiff has suffered and will continue to suffer mental disregard of Plaintiff's rights. Plaintiff is therefore entitled to recover punitive damages against Defendants.

## NINTH CAUSE OF ACTION

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### AGAINST DEFENDANTS AND DOES 1 – 10

59. Plaintiff incorporates by reference the factual allegations set forth in all preceding paragraphs.

60. Plaintiff is informed and believes and thereon alleges that Defendants, by and through their principals, agents and employees, conducted themselves unlawfully in violation of public policy and applicable law as described above with conscious disregard of the result or outcome of such act. Subjecting Plaintiff to the conduct described above throughout her employment was extreme and outrageous conduct by Defendants and each of them.

61. Through the outrageous conduct described above, Defendants acted negligently and with disregard for the probability of causing Plaintiff to suffer severe emotional distress. At all relevant times, Defendants had actual or constructive knowledge of extreme and outrageous conduct described herein, and condoned, ratified and participated in such extreme and outrageous acts.

62. As a direct and proximate result of Defendants' failure to act, Plaintiff has suffered and will continue to suffer mental distress and anguish. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. That judgment be entered in favor of Plaintiff;
2. For general damages according to proof,
3. For special damages in amounts according to proof;
4. For exemplary and punitive damages in amounts according to proof;
5. For injunctive relief as provided by law;
6. For declaratory relief as provided by law, including, inter alia, that Defendant's actions against Plaintiff violated Government Code section 12940, et seq., and all other statutes alleged herein;
7. For cost of suit incurred herein;
8. For attorneys' fees as provided by law; and
9. For such other and further relief as the Court deems fair and just.

Dated:   October  12, 2020                           LAW OFFICES OF JILL P. TELFER

_/s/ Jill P. Telfer_
JILL P. TELFER
Attorney for Plaintiff, MARLIESE JEPHSON